MEMORANDUM AND ORDER ON DEFENDANT’S MOTION FOR SUMMARY JUDGMENT
URBOM, Senior District Judge.
The plaintiff, Norval Van Diest, doing business as Van’s Ranch Service, has brought this action against Conoco Inc. (“Conoco”), pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. (“PMPA”). Van Diest contends that Conoco nonrenewed his jobber franchise agreement in violation of the PMPA. The PMPA provides that once a franchisee establishes the nonrenewal of the franchise, then the franchisor bears the burden of establishing, as an affirmative defense, “that such nonrenewal was permitted under section 2802(b) or 2803 of this title.” 15 U.S.C. § 2805(c).
Conoco has moved for summary judgment, filing 49, as well as for partial summary judgment on the issue of damages, filing 47. Should I find that no genuine issue of material fact exists on the issue of liability and that the defendant is entitled to judgment as a matter of law, then the earlier motion for partial summary judgment would become moot. Therefore, I shall first consider the defendant’s motion for summary judgment.
*1417 I.STANDARD OF REVIEW
Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when “there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met the burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. “A scintilla of evidence in support of the nonmovant’s position is not sufficient to successfully oppose a motion for summary judgment; there must be evidence on which the jury could reasonably find for the [non-moving party].” Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2511-12.
II.FACTUAL BACKGROUND
For nearly thirty years, Van Diest conducted business as a Conoco franchisee in Dunning, Nebraska. His business consisted of a filling station where he sold exclusively Conoco products and service of Conoco products with a tank wagon. In connection with the franchise the plaintiff operated the only grocery store in Dunning. The last jobber franchise agreement between Van Diest and Conoco commenced on April 1, 1990, and expired on March 31, 1993.
On December 28,1992, Conoco notified the plaintiff by letter that it would not be renewing its jobber franchise agreement with Van Diest. Conoco stated that it had conducted an extensive profitability study of its entire jobber distribution channel and had determined that the plaintiffs jobber franchise agreement was “likely to be uneconomical to Conoco.” Filing 1, Exh. B. The letter advised the plaintiff that pursuant to 15 U.S.C. § 2802(b)(3)(D)(i)(IV) his jobber franchise agreement was nonrenewed effective April 1, 1993.
Van Diest alleges that Conoco deliberately deceived him by purposely withholding notice of nonrenewal from him, while informing his competitors of Conoco’s intention not to renew his franchise. Such actions destroyed the good will and value of the plaintiffs business in Dunning. These actions, claims the plaintiff, also violated 15 U.S.C. § 2802 of the Act. Van Diest seeks actual and exemplary damages, court costs, expert witness fees, and attorney fees. Filing 1 at pp. 5-6.
III.PETROLEUM MARKETING PRACTICES ACT
Congress enacted the Petroleum Marketing Practices Act (“PMPA”) to “protect franchised retailers of motor fuel” from “arbitrary or discriminatory termination or nonre-newal of their franchises.” Grotemeyer v. Lake Shore Petro Corp., 749 F.Supp. 883, 886 (N.D.Ill.1990) (citing S.Rep. No. 731, 95th Cong.2d Sess. 15, reprinted in 1978 U.S.Code Cong. & Admin.News 873, 874). The PMPA prohibits franchisors from terminating or failing to renew franchises except on the basis of specifically enumerated grounds and upon compliance with certain notification requirements. Id. at 886.
1. Notice of Nonrenewal under PMPA
For nonrenewal to be effective under the PMPA, a franchisor must give the franchisee notice of nonrenewal. 15 U.S.C. § 2802(b)(1)(A). To be considered effective, the notification must, among other things, contain “a statement of intention to terminate the franchise or not to renew the franchise relations, together with the reasons therefor.” 15 U.S.C. § 2804(c)(3)(A). “The PMPA requires only that the franchisor articulate with sufficient particularity the basis for the decision not to renew so that the franchisee can determine his rights under the act.” Kessler v. Amoco Oil Co., 670 F.Supp. 853, 856 (E.D.Mo.1987) (quoting *1418 Brach v. Amoco Oil Co., 677 F.2d 1213, 1226 (7th Cir.1982)).
2. Nonrenewal under the PMPA
Section 2802(b)(3)(D) of the PMPA reads in relevant part:
(D) In the case of any franchise entered into prior to June 19, 1978, (the unexpired term of which, on such date, is 3 years or longer) and, in the case of any franchise entered into or renewed on or after such date (the term of which was 3 years or longer, or with respect to which the franchisee was offered a term of 3 years or longer), a determination made by the franchisor in good faith and in the normal course of business, if—
(i) such determination is—
(IV) that renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee;
15 U.S.C. § 2802(b)(3)(D)(i)(IV).
The PMPA does not define the terms “good faith” and “in the normal course of business.” However, the Senate Report states:
This good faith test is meant to preclude sham determinations from being used as árn artifice for termination or non-renewal. The second test is whether the determination was made “in the normal course of business”. Under this test, the determination must have been the result of the franchisor’s normal decision making process. These tests provide adequate protection of franchisees from arbitrary and discriminatory termination or non-renewal, yet avoid judicial scrutiny of the business judgment itself.
S.Rep. No. 731, 95th Cong., 2d Sess. 37, reprinted in 1978 U.S.Code Cong. & Ad. News 873, 896; quoted in Beck Oil v. Texaco Refining & Marketing, 822 F.Supp. 1326, 1329 (C.D.Ill.1993).
The Senate Report directs the judiciary to examine the intent of the franchisor rather than the effect of its actions upon the franchisee. Under the PMPA, good faith is determined subjectively from objective evidence, including affidavits and business studies. Beck Oil, 822 F.Supp. at 1329 (citing Brach v. Amoco Oil Co., 677 F.2d 1213, 1223 (7th Cir.1982); and Baldauf v. Amoco Oil Co., 553 F.Supp. 408, 411 (W.D.Mich.1981), aff'd 700 F.2d 326 (6th Cir.1983)). Because the franchisor’s actions are measured by a subjective, rather than objective, standard, “it is not necessary for the courts to determine whether a particular marketing strategy ... is a wise business decision.” Kessler, 670 F.Supp. at 857 (quoting S.Rep. No. 95-731, reprinted in 1978 U.S.Code Cong, and Ad.News, 873, 896).
Thus, a court is not to be concerned with whether the changes or additions proposed were objectively necessary to make the franchise economically worthwhile or whether the changes or additions were somehow disadvantageous to the franchisee. See Grotemeyer, 749 F.Supp. at 891. Rather, the relevant inquiry for the court to focus on is whether the proposed changes or additions reflected a good faith effort to achieve a legitimate purpose or whether the changes or additions were designed as a pretext to disenfranchise the plaintiff. Id.
IV. ANALYSIS
To determine whether a genuine issue of material fact exists in this case, I must conduct a two-prong test. First, I must examine whether Conoco’s nonrenewal decision was made in good faith. Second, I must examine whether nonrenewal was the result of the Conoco’s normal decision making process. Roberts v. Amoco Oil Co., 740 F.2d 602, 606 (8th Cir.1984); Beck, 822 F.Supp. at 1329. If the evidence establishes any genuine factual disputes pertaining to either prong of the test, then I must deny the motion, as I may not resolve factual disputes on a motion for summary judgment.
In the autumn of 1992, Conoco commenced a study on branded wholesale jobber profitability with the intention of obtaining comprehensive earnings analysis by sales channel or customer. The study was completed in December 1992. Conoco has submitted the study along with a summary report as a sealed summary judgment exhibit. Sealed Filing 65. According to the summary report Conoco had experienced substantial operating losses in its branded wholesale division *1419 during 1991 and 1992. Id. A reason cited by the report for continued operating losses was the number of wholesale jobbers that did not produce adequate gross margins to cover fixed and variable operating costs. Id. These jobbers generated cash losses that were not offset by the profits derived from the remaining customer base. Id.
Various case studies were performed using both historical profitability data and a one-year forecast for 1993. Based upon the findings of the case studies, the authors of the study determined that branded jobbers with 1993 fuel sales of less than approximately 2 million gallons would not cover the Conoco’s fixed and variable operating costs and would therefore be a net cash drain on Conoco. The summary report concluded that 2 million gallons of annual branded gas or 3.5 million gallons of total branded gas and diesel sales would be required to cover break-even costs in 1993 and into the near future. Sealed filing 65.[1] However, the report recommended that the new annual gas sales volumes begin at 1 million gallons effective April 1993 and increase gradually to 2 million gallons over a three-year period.
The summary report accompanying the study recommended that Conoco notify all jobbers of the new minimum gallonage requirements by January 1, 1993. The report also recommended that jobbers whose annual sales of branded gasoline fell below 1 million gallons should be nonrenewed. The study concluded that if Conoco was to be a premier international petroleum company, then its branded wholesale division must become profitable and remain so over time. Sealed Filing 65.
On December 28, 1992, W.R. Hamm, the General Manager of Conoco’s Branded and Retail Marketing Division, notified Van Diest in writing that his jobber franchise agreement with Conoco was to be nonrenewed effective April 1,1993. In its letter of nonre-newal Hamm wrote that “[ajfter an extensive study by Conoco of its entire jobber distribution channel, Conoco has determined that your Jobber Franchise Agreement is likely to be uneconomical to Conoco.” Def.Exh. 2B.
Under the PMPA a franchisor’s determination that a franchise relationship is uneconomical must be reached in good faith and in the normal course of business by the franchisor. See 15 U.S.C. § 2803(b)(3)(D). Therefore, I must first examine the subjective intent of Conoco. All the evidence establishes that Conoco’s decision to implement minimum gallonage requirements for branded wholesale jobbers was performed in good faith. Indeed, the plaintiff fully concedes in his deposition that he was not arbitrarily singled-out, nor did Conoco discriminate against his particular franchise. Filing 50, Exh. 1, Affid. of Van Diest, pp. 550 & 712; Filing 51, Exh. 5, Affid. of Ralph Nansel ¶ 3. In his deposition Van Diest acknowledges that other jobbers lost their franchises due to the increase in the minimum gallonage requirements. Id. at p. 712.
At the time Van Diest received written notice of nonrenewal his annual sales of Co-noco gasoline were only 298,000 gallons. Co-noco could not expect that Van Diest would ever fulfill the 1 million, let alone 2 million, gallonage requirement. In order for Van Diest to have remained a direct supply jobber of Conoco gasoline he would have had to more than triple his annual sales over a matter of months to meet the 1 million gal-lonage requirement and have increased his annual sales nearly seven times over the next three years to meet the 2 million gallonage requirement. Cf. Kessler, 670 F.Supp. at 858. Given the fact that Dunning is town with a small population and the fact that the plaintiffs franchise was already serving a 2,400 square mile area, it was not realistic for Conoco to expect that Van Diest could ever meet the new minimum gallonage requirements as a direct supply jobber.
Following notice of nonrenewal, an account manager for Conoco named Cíete D. Lauck contacted plaintiff on two occasions in January to discuss with Van Diest various indirect supply options which may have enabled the plaintiff to continue selling Conoco products to his customer base. Def.Exh. 5., Affid. of Cíete D. Lauck, ¶ 5 at p. 2. Lauck made a fourth attempt to continue discussions with *1420 Van Diest in February 1993, but the plaintiff refused to meet with him. Id. at ¶6. In addition, the uncontroverted evidence shows that Conoco acted in good faith by continuing to supply the plaintiff with branded products until September 30, 1993, five months after the published nonrenewal date. Because I have no evidence of bad intent on the part of Conoco, I find as a matter of law that Conoco acted in good faith when deciding to nonre-new the plaintiffs franchise agreement.
The second inquiry I must make is to examine whether the nonrenewal occurred in the normal course of business. Under the second prong, the legislative history of the PMPA requires only that the franchisor show that its nonrenewal decision was the “result of the franchisor’s normal decision-making process.” S.Rep. No. 95-731, reprinted in 1978 U.S.Code Cong. & Ad.News, 873, 895-96. See Roberts, 740 F.2d at 606; Brack, 677 F.2d at 1222; Kessler, 670 F.Supp. at 858; and Munno v. Amoco Oil Co., 488 F.Supp. 1114, 1119 (D.Conn.1980).
In this case Conoco conducted a branded wholesale jobber profitability study and determined that annual sales volumes of branded products would have to increase significantly in order to offset operating costs and to make branded wholesale a profitable division. The only evidence before me suggests that the minimum gallonage requirements are both an integral and reasonable outcome of the branded wholesale jobber profitability study. Cf. Malone v. Crown Central Petroleum Corp., 474 F.Supp. 306, 310 (D.Md.1979).
Although the plaintiff decries the extremely harsh effects of the minimum gallonage requirements, there is no evidence before me suggesting that the required annual sales volumes have a purpose other than the implementation of Conoco’s legitimate marketing goal of maximizing its volume of branded product sales. No evidence before me indicates that the increase in minimum gallonage was proposed by Conoco to prevent renewal Van Diest’s or any other direct supply jobber’s franchise agreement. Thus, I must find, as a matter of law, that Conoco’s decision to nonrenew the plaintiffs franchise agreement was made in the normal course of business.
Having found that Conoco acted both in good faith and in the normal course of business in deciding that renewal of the plaintiffs jobber franchise agreement would be uneconomical, I find that the defendant is entitled to summary judgment.
IT IS THEREFORE ORDERED that:
1. The defendant’s motion for summary judgment, filing 49, is granted; and
2. The defendant’s motion for partial summary judgment, filing 47, is moot.
MEMORANDUM AND ORDER ON PLAINTIFF’S MOTION FOR NEW TRIAL, FOR ALTERATION OF JUDGMENT, AND FOR ORAL ARGUMENT
Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, the plaintiff has moved that I reverse my March 16, 1994 Order, filing 74, granting summary judgment in favor of the defendant. Filing 71. The plaintiff has asked for a new trial, for alteration of judgment, and for oral argument.
In support of the motion, the plaintiff advances -five reasons for granting the motion. First, Van Diest argues that I erroneously applied the summary judgment standard of review. Second, the plaintiff contends that' Conoco has failed to- supply the court with any evidence that the plaintiffs franchise would be uneconomical “despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee.” Petroleum Marketing Practices Act (“PMPA”), Í5 U.S.C. § 2802(b)(3)(D)(i)(rV). Third, the plaintiff argues that Conoco should be required to prove that other jobbers had identical franchises to the plaintiffs and that their jobber contracts contained the requirement that volume of sales must not increase. Fourth, Van Diest argues that I erred in allowing Conoco to assert a defense outside the scope of its answer. Fifth, Van Diest contends that I further erred in citing cases, all of which were irrelevant to the plaintiffs factual situation.[1]
*1421 I. PROCEDURAL ISSUES
A. Standard of Review
The plaintiff first argues that I erred in applying a summary judgment standard of review pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Van Diest correctly cites the burden of proof required under the PMPA. A franchisee must first establish that a franchise has been terminated or non-renewed. Then the burden of going forward shifts to the franchisor to establish an affirmative defense under section 102(b) of the Act. 15 U.S.C. § 2805(c).
In this case Van Diest established that his jobber franchise agreement had been nonre-newed. Conoco then pled an affirmative defense that renewal of the plaintiffs franchise agreement was likely to be uneconomical. Filing 14 at ¶ 11. This defense is permitted under section 102(b) of the PMPA. Next, Conoco moved this court for summary judgment. In accordance with Rule 56,1 applied the following standard of review:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
Fed.R.Civ.P. Rule 56(c)
Upon reviewing the pleadings and evidence submitted in support of the defendant’s motion for summary judgment, I determined that no genuine issue of material fact existed as to the affirmative defense that the plaintiffs contract was nonrenewed in good faith and in the normal course of business because the defendant deemed that the franchise agreement was likely to be uneconomical.
I agree with the defendant that Van Di-est’s contention that I erred in applying the standard of review for summary judgment is tantamount to arguing that Rule 56(c) does not apply to PMPA cases. The Federal Reporter and Federal Supplement are replete with PMPA summary judgment cases which establish that summary judgments are both applicable and appropriately granted. I find no merit in this procedural argument.
B. Affirmative Defense Outside of Pleadings
The second procedural error assigned is that I allowed Conoco to assert an affirmative defense that was not included in its answer. It is true that in its motion for summary judgment the defendant asserted a statutory defense found at 15 U.S.C. § 2802(b)(1)(A) that was not pled in its answer. Cf ¶ 4 of Fifing 49 with Filing 14. However, I neither acknowledged nor ruled upon this affirmative defense, precisely because the defense was outside of the scope of the pleadings. Rather, I granted summary judgment on the affirmative defense originally pled in the answer, namely that “[t]he basis for nonrenewal was a determination by Conoco that the Jobber Franchise Agreement was likely to be uneconomical to Cono-co as set forth in a letter from Conoco to plaintiff dated December 28, 1992, which is attached to plaintiffs Complaint as Exhibit “B”.” Fifing 49 at ¶ 11. As such, I find no merit in this second procedural claim.
II. EVIDENTIARY CLAIMS
A. Proof under 15 U.S.C. § 2802(b)(3)(D)(i)(IV)
Van Diest next claims that I erred in granting the defendant’s motion for summary judgment because Conoco failed to supply any evidence that plaintiffs franchise would be uneconomical despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee. Contrary to the plaintiffs contention, Conoco did present evidence that renewing a jobber franchise *1422 agreement with a franchisee whose annual sales volumes were less than one million gallons was and would be uneconomical despite any reasonable changes or reasonable additions. That evidence consisted of a business forecast study along with several affidavits, attesting that Conoco made bona fide efforts to negotiate reasonable accommodations with the plaintiff.
What the defendant did not offer was a micro-economic study selectively focused on the Van Diest franchise which showed that his franchise had been and would likely continue to be uneconomical despite reasonable changes or additions. However, my interpretation of the applicable case law was and remains that no franchisee-specific business forecast is required for nonrenewal on the basis that a franchise was likely to be uneconomical. Instead, I interpret the PMPA and supporting case law as protecting franchisors who- make large-scale business judgments, so long as they are made in good faith and in the normal course of business, as opposed to being made as the result of caprice and arbitrariness. In fight of my interpretation I shall decline the plaintiff’s invitation to make new law, and I affirm my earlier ruling.
B. Evidence of Discrimination
Closely related is plaintiff’s second eviden-tiary claim that in order for the defendant to succeed in showing that it did not act in a discriminatory manner, the franchisor must prove that it nonrenewed franchisees having identical jobber franchise agreements to that of the plaintiff, including the requirement that volume of sales should not be increased. In its reply brief the plaintiff contends that “... Conoco must allege or prove that its other franchisees had franchises that limited the amount [of fuel] that could be purchased.” Reply Brief in Supp. of Mtn for New Trial, Alteration in Judgment, and Oral Argument at p. 4.
I have found no support for this evidentia-ry theory; the plaintiff has presented no authority or precedent for it. Thus, I must dismiss the fourth claim as meritless.
III. RELEVANCY
Lastly, Mr. Van Diest contends that none of the case law cited in my earlier memorandum and order, fifing 71, is on point. Specifically, he claims that none of the cases I cited involve an oil company as the franchisor, ownership of the service station by the franchisee, and nonrenewal based on the failure of the franchisee to achieve a sales volume several times greater than the volume required when he received the franchise. Admittedly, no cases cited—or reported for that matter—are factually analogous to this case. However, this fact alone does not make the legal reasoning contained in those cases inapposite. I have discovered nothing to date that distinguishes franchisee-owners from franchisee-lessees in the context of termination or nonrenewal of jobber franchise agreements. I think ownership is not relevant to the legal issue of whether termination or nonrenewal of a jobber franchise contract is justified under the PMPA.[2] Accordingly, I shall also dismiss this fifth claim as meritless.
IT IS THEREFORE ORDERED that the plaintiff’s motion for new trial, for alteration of judgment, and for oral argument, fifing 74, is denied.

. Because the conclusions of defendant's study and the minimum gallonage requirements are cited elsewhere in nonsealed briefs and exhibits, the court has incorporated the material into its analysis.

. A sixth reason is yet asserted in support of granting the motion:
nothing in Plaintiff’s franchise [agreement] indicated "that a greater volume of sales was expected from” him.... Such situation *1421 should have required an offer to the Plaintiff of "reasonable changes or reasonable additions” to the provisions of his franchise such as allowing him a reasonable time, certainly not less than a year or two, in which to increase his volume of sales to one million gallons annually, or a price adjustment.
Because the second ground asserted discusses "reasonable changes or reasonable additions” I shall incorporate paragraph 5 into paragraph 2 for the purposes of my review.

. In contrast to the issue of liability under the PMPA, ownership may well be relevant to.the issue of damages.